# STATE OF CONNECTICUT *v.* KEITH E. TIETJEN
## (AC 27343)

DiPentima, McLachlan and Hennessy, Js.

Argued October 9—officially released December 18, 2007

*James J. Ruane*, for the appellant (defendant).

*Bruce Lockwood*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael A. DeJoseph*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Keith Tietjen,[1] appeals from the judgment of conviction rendered by the trial court following the denial of his motion to dismiss and entry of a nolo contendere plea[2] to operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes (Rev. to 2003) § 14-227a (a) (2).[3] On appeal, the defendant claims that the results of the Intoxilyzer 5000 should have been suppressed because its use does not comply with department of public safety regulations. We affirm the judgment of the trial court.

The essential facts relevant to our disposition of the defendant's appeal are undisputed.[4] Between midnight and 12:15 a.m. on July 10, 2004, a 2003 Hummer H-2

---

[1] The defendant's name also appears in the record as Keith Tiet-Jen.

[2] The plea of nolo contendere was conditional on the right to appeal pursuant to General Statutes § 54-94a and Practice Book § 61-6 (2) (i).

[3] General Statutes (Rev. to 2003) § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight."

[4] The facts were alleged by the prosecutor during the defendant's plea canvass as evidence that the state would have been able to prove had the case gone to trial. The defendant did not contest what was alleged.

was being driven on the Merritt Parkway eastbound in the area of exit thirty-eight. When that vehicle was in the deceleration lane for exit thirty-eight, it went off the exit ramp, hit a small tree and continued through the exit thirty-eight on ramp before striking another tree and coming to rest. Sergeant James Walsh of the Norwalk police department was the first to arrive on the scene. The defendant, who was standing outside the car, stated that he had not been driving the vehicle. Walsh smelled the odor of alcohol on the defendant's person and observed some heavy front end damage to the vehicle.

Trooper Brian Rogawlski of the state police was the next to arrive on the scene. The defendant refused to answer any questions. Rogawlski also smelled alcohol coming from the defendant's person and observed that he had red, glassy eyes and that there was a cut on his hand and lip. From these observations and examination of the interior and exterior of the vehicle, Rogawlski concluded that the defendant had been operating the vehicle. He proceeded to administer field sobriety tests on the defendant, which the defendant failed. The defendant was taken to the state police Troop G barracks in Bridgeport at about 1 a.m. where he was asked what time he had started drinking, and he responded by stating that he had begun drinking at 10 p.m. on July 9, 2004. The defendant also was asked what time he had stopped drinking, and he stated that he had stopped at 1 a.m. on July 10, 2004. The defendant stated that he had four beers at the Crabshell in Stamford and that he had not eaten since breakfast.

The defendant was asked to perform a breath test on the Intoxilyzer 5000.[5] His first test was taken at 1:24

---

[5] During the suppression hearing, Robert H. Powers, director of the controlled substance toxicology laboratory for the department of public safety, testified that the Intoxilyzer 5000 measures ethanol in a gas sample, meaning breath, and is not meant for blood samples. Use of the Intoxilyzer 5000 produces a test result expressing blood alcohol concentration as a weight per volume percent.

a.m. on July 10, 2004, and reported a result of 0.225 percent. The defendant took a second breath test at 2:03 a.m., with a result of 0.209 percent. Thereafter, the state charged the defendant with operating a motor vehicle while under the influence of intoxicating liquor or drugs with an elevated blood alcohol content in violation of § 14-227a (a) (2).

Prior to trial, the defendant filed several motions in limine to preclude the results of the breath tests. On October 11, 2005, the parties argued the motions, which the court denied. In the defendant's motion to preclude the results of the breath tests, he argued for preclusion because the tests did not comply with state regulations in force at the time of the incident.[6] The court denied this motion, interpreting § 14-227a (b) and § 14-227a-1a of the Regulations of Connecticut State Agencies to not require that the breath test results be recorded as described by the regulations, meaning as a weight per weight percent,[7] only that the tests be performed in

---

[6] Section 14-227a-1a of the Regulations of Connecticut State Agencies in effect at the time of the incident provides in relevant part: "(4) 'Blood ethyl alcohol concentration' means the unit weight of alcohol per one hundred (100) unit weights of blood expressed as percentage; for example, five hundredths (0.05) gram of alcohol per one hundred (100) grams of blood shall be expressed as five hundredths (0.05) per cent. . . .

"(7) 'Device' or 'instrument' means any apparatus and associated accessories by means of which equivalent blood alcohol concentration is indicated or recorded on a dial, meter, scale, chart or printed record activated by a reaction between a sample introduced and appropriate detector in a chamber, tube or vessel within such apparatus . . . ."

The defendant argues that these definitions in combination mean that the test reports must be based on an equivalent concentration on a weight per weight basis. The definitions were amended in 2005 to explicitly allow for the testing to be recorded in an equivalent ratio to blood alcohol content. Regs., Conn. State Agencies § 14-227a-1b.

[7] Blood alcohol content is expressed as grams of alcohol per 100 milliliters of blood, which is a weight per weight ratio. The Intoxilyzer 5000 determines alcohol concentration as grams of alcohol per 210 liters of breath which is a weight per volume ratio. The weight per volume ratio is then converted into a ratio of weight per weight. *State* v. *Pilotti*, 99 Conn. App. 563, 573–74, 914 A.2d 1067, cert. denied, 282 Conn. 903, 919 A.2d 1037 (2007).

accordance with the regulations, because of explicit statutory requirements. The court further ruled that the test performed in this case complied with the regulations.[8]

On October 21, 2005, the defendant entered a plea of nolo contendere to the charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a. On December 21, 2005, the court sentenced the defendant to six months incarceration, execution suspended after two days, the mandatory minimum, and two years of probation and also ordered him to pay a $500 fine. This appeal followed.

The defendant claims that the court improperly denied his motion in limine to preclude the results of the breath tests. He specifically argues that the results of the Intoxilyzer 5000 do not comply with the department of public safety regulations because the apparatus reports blood alcohol content in terms of a weight per volume percent and not a weight per weight percent.[9] The state argues that the court properly denied the motion and that the issue presented already has been decided by this court in *State* v. *Pilotti*, 99 Conn. App. 563, 914 A.2d 1067, cert. denied, 282 Conn. 903, 919 A.2d 1037 (2007).[10] We agree with the state.

In *Pilotti*, the defendant argued that the court improperly admitted the breath test results because the test failed to comply with the statutes and regulations. Id. The only difference in the case at bar is that this claim

[8] See *State* v. *Jones*, 51 Conn. App. 126, 721 A.2d 903 (1998), cert. denied, 247 Conn. 958, 723 A.2d 814 (1999).

[9] The defendant also claimed that the regulations rise to the level of a statute. We have found no authority to support that statement.

[10] The opinion in *Pilotti* was published after the defendant's opening brief was submitted. Counsel for the defendant argued at oral argument that *Pilotti* decided a different issue and could be distinguished because it did not deal directly with the regulations. Our reading of *Pilotti* belies that argument. See *State* v. *Pilotti*, supra, 99 Conn. App. 567–71.

was argued in terms of a motion in limine. This is a distinction without a difference. In *Pilotti*, this court cited § 14-227a (d), which provides in relevant part: "The Commissioner of Public Safety shall ascertain the reliability of each method and type of device offered for chemical testing and analysis purposes of blood, of breath and of urine and certify those methods and types which said commissioner finds suitable for use in testing and analysis of blood, breath and urine, respectively, in this state. The Commissioner of Public Safety shall adopt regulations . . . governing . . . the operation and use of chemical test devices . . . as said commissioner finds necessary . . . to insure reasonable accuracy in testing results." (Internal quotation marks omitted.) *State* v. *Pilotti*, supra, 99 Conn. App. 568. The court held that "under [the] plain language of § 14-227a (d), chemical testing is not limited to blood testing. The statute also clearly contemplates the testing of breath." Id. Further, "General Statutes § 14-227a (b) requires the state to establish as a foundation for the admissibility of chemical analysis evidence that the test was performed with the equipment approved by the department of public safety. It does not require . . . that the device satisfy the criteria set forth in the regulations." *State* v. *Pilotti*, supra, 570. This is because, although the "testing that complies with the regulatory requirements is deemed to be competent evidence . . . [i]t does not, however, proscribe the admission of evidence that fails to satisfy those requirements." (Internal quotation marks omitted.) Id., quoting *State* v. *Kirsch*, 263 Conn. 390, 408, 820 A.2d 236 (2003).

As this court ruled in *Pilotti*, and we hold in this case, the statutory requirement was met through the use of the Intoxilyzer 5000 results. *State* v. *Pilotti*, supra, 99 Conn. App. 570.

The judgment is affirmed.

In this opinion the other judges concurred.