ADAM STASH *v.* COMMISSIONER OF
MOTOR VEHICLES*

JOHN PCOLKA *v.* COMMISSIONER OF
MOTOR VEHICLES

GREGORY MAKELA *v.* COMMISSIONER OF
MOTOR VEHICLES

CAROLE PECK *v.* COMMISSIONER OF
MOTOR VEHICLES

Superior Court, Judicial District of New Britain
File Nos. HHB CV-06-4010751, HHB CV-06-4010117, HHB CV-06-4011752,
HHB CV-07-4014305

Memorandum filed December 23, 2008

* Affirmed. *Stash* v. *Commissioner of Motor Vehicles*, 297 Conn. 204, 999 A.2d 696 (2010).

*James J. Ruane* and *James O. Ruane*, for the plaintiff Adam Stash et al.

*Eugene Riccio*, for the plaintiff Gregory Makela.

*Eileen Meskill*, assistant attorney general, for the defendant (state).

HON. GEORGE LEVINE, JUDGE TRIAL REFEREE.

I

INTRODUCTION

Driving a motor vehicle while under the influence can have criminal consequences under General Statutes § 14-227a (hereinafter the criminal statute), and/or administrative consequences under General Statutes § 14-227b (hereinafter the per se statute). As described below, the criminal statute and the per se statute interrelate in regard to the captioned matters.

Each of these matters is an appeal from a final decision of the defendant, the commissioner of motor vehicles, suspending the operator's license (license) of one of the plaintiffs[1] under the per se statute. Each of these appeals presents the same question about a device, known as the Intoxilyzer 5000 EN (Intoxilyzer), which is used by many police departments in Connecticut to measure the blood alcohol content of people arrested for driving while under the influence of alcohol.

After being arrested for driving while under the influence of alcohol, each of the plaintiffs submitted to a

---

[1] The plaintiffs are Adam Stash, John Pcolka, Gregory Makela and Carole Peck.

blood alcohol content test by an Intoxilyzer and now challenges the results of that test. In particular, their claim is that the Intoxilyzer measures blood alcohol content by volume, rather than by weight, contrary to the mandate of § 14-227b (o) of the per se statute that blood alcohol content be measured by weight for purposes of administrative license suspension.

Because these appeals all raise the same issue, they are sometimes, hereinafter, collectively referred to as the appeal and all the plaintiffs are sometimes, hereinafter, collectively referred to as the plaintiff.

## II

## STATUTES AND REGULATIONS

### A

#### The Criminal Statute and Regulations

Section 14-227a (a) of the criminal statute: (1) makes it a crime to operate a motor vehicle with an "elevated" blood alcohol content; and (2) defines " 'elevated blood alcohol content' " as a "ratio of alcohol in the blood . . . that is eight-hundredths of one per cent or more of alcohol, by weight . . . ." General Statutes § 14-227a (a) (2).

Section 14-227a (d) of the criminal statute directs the public safety commissioner both: (1) to promulgate regulations governing the testing of blood alcohol content; and (2) to certify those devices which are determined to be suitable for testing blood alcohol content in blood, breath and urine of operators in Connecticut. Pursuant to that statute, the public safety commissioner has promulgated § 14-227a-1b et seq. (criminal regulations) of the Regulations of Connecticut State Agencies (regulations), which establish the methodology for measuring blood alcohol content for purposes of the criminal statute. Section 14-227a-1b (6) of the criminal

regulations provides that a device which is used for measuring blood alcohol content may indicate an "equivalent" blood alcohol content.

Pursuant to § 14-227a-1b (6) of the criminal regulations, the public safety commissioner has approved the use of the Intoxilyzer to measure blood alcohol content.

## B

### The Per Se Statute and Regulations

Section 14-227b (a) of the per se statute provides that an operator driving in Connecticut is deemed to have consented to a chemical analysis of the blood alcohol content of the operator's blood, breath or urine.

Section 14-227b (o) of the per se statute defines elevated blood alcohol content, for operators twenty-one years of age or older,[2] as "a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . ." That definition matches the definition of elevated blood alcohol content in § 14-227a (a) of the criminal statute.

Section 14-227b (e) (1) of the per se statute provides, inter alia, that if a chemical analysis of the blood of an operator indicates an elevated blood alcohol content, the defendant may suspend that operator's license.

Section 14-227b (p) of the per se statute directs the defendant to adopt regulations to implement the per se statute. Pursuant to that directive, the defendant has promulgated § 14-227b-1 et seq. of the regulations (per se regulations). Section 14-227b-2 (c) of the per se regulations piggybacks on § 14-227a-1b et seq. of the criminal regulations to make the Intoxilyzer an approved device for measuring blood alcohol content under the per se statute.

---

[2] Each plaintiff was over the age of twenty-one at relevant times.

## III

## HEARING AFTER REMAND

### A

### Court's Questions and Hearing Officer's Responses

After a hearing before the court, the appeal was remanded to the defendant: (1) to permit the parties to produce additional evidence concerning how the Intoxilyzer determines blood alcohol content; and (2) to answer questions posed by the court concerning what the Intoxilyzer measures. Pursuant to that remand order, further evidence was taken and additional findings were made by the hearing officer who was designated by the defendant (hearing officer) to hear these matters.

The first question posed to the hearing officer, and a portion of the hearing officer's response to that question, are:

Question

"What does the [I]ntoxilyzer . . . measure? Specifically, what do the test strips produced by the [I]ntoxilyzer . . . mean in terms of the ratio of alcohol in a person's blood?"

Response

"The test strips of the Intoxilyzer . . . exhibit the amount of alcohol stated in grams (weight) in a volume of 210 liters of breath which is equivalent to the volume of 100 milliliters of blood. The equivalency is based upon a physiological premise known as the blood/breath partition coefficient on ratio. The Intoxilyzer . . . is programmed at a partition coefficient of 1:2100 which is the ratio of one molecule of alcohol in the gas (breath) for 2100 molecules of alcohol in the blood. The coefficient at which the Intoxilyzer is programmed

actually underestimates the blood alcohol concentration in the average person by 12 to 12 1/2 [percent]."

The following question was also posed to the hearing officer, after which is stated the hearing officer's response:

### Question

"If the Intoxilyzer . . . measures the percentage of alcohol in terms of a weight-by-volume ratio of alcohol to blood, does the Intoxilyzer . . . have the capacity to convert that weight-by-volume measurement into a weight-by-weight measurement? If yes, is there a margin of error in the conversion by an Intoxilyzer . . . from a weight-by-volume to a weight-by-weight measurement?"

### Response

"The Intoxilyzer . . . measures the amount of alcohol in a person's breath on a weight-per-volume basis which is then expressed in a blood alcohol concentration on a weight-per-volume basis. At one time, the [s]tate . . . used a weight-by-weight measurement but abandoned this method because this practice was not generally accepted within the forensic medical community. The Intoxilyzer . . . does not have the capacity to convert from weight-per-volume to weight-per-weight but that can be accomplished by subtracting 5 [percent] (margin of error) from the test reading."

The court also posed the following question, after which the hearing officer's response is stated:

### Question

"Does one taking a [blood alcohol content] test on an Intoxilyzer . . . exhale 210 liters of breath?"

### Response

"A person who submits to an Intoxilyzer . . . test does not exhale 210 liters of breath. The Intoxilyzer

. . . expresses its results as the weight of alcohol per 210 liters of breath."

Two other questions were posed by the court, but the hearing officer's responses to them do not bear significantly on this decision.

## B

### Evidence at Remand Hearing

At the remand hearing, the hearing officer took evidence from Robert Powers, Director, Controlled Substances Toxicology Laboratory, Connecticut Department of Public Safety, a forensic scientist who was called by the defendant, and from Michael Hlastala, a professor at the University of Washington School of Medicine, an expert in the physiology of the lungs, who was called by the plaintiff.

In responding to the questions posed by the court, the hearing officer relied largely on the testimony of Powers, which is reflected in the hearing officer's responses. The plaintiff argues that the testimony of Hlastala, which differs in material respects from that of Powers, is more persuasive than that of Powers. However, that is not a question for the court, and it is held that Powers' testimony constitutes substantial evidence to support the findings made by the hearing officer in his responses to the court's questions. See *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 833, 955 A.2d 15 (2008) ("[a]n administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred" [internal quotation marks omitted]).

## IV

### ISSUE

The single legal issue in this appeal is whether the Intoxilyzer measures "alcohol, by weight," as required

by § 14-227b (o) of the per se statute. Phrased differently, the question is whether an Intoxilyzer's "equivalent" measurement of blood alcohol content pursuant to the criminal regulations complies with the requirement of § 14-227b (o) that blood alcohol content be measured by weight for purposes of the per se statute.

The hearing officer found that one taking an Intoxilyzer test does not exhale 210 liters of breath and that the Intoxilyzer extrapolates from the volume of breath exhaled and the weight of alcohol in that exhaled breath how much alcohol would be present in 210 liters of that person's breath. The hearing officer also found that the weight of alcohol in 210 liters of breath is equivalent to the weight of alcohol in 100 milliliters of blood. In effect, the hearing officer found that the weight-by-volume measurement produced by the Intoxilyzer is the "equivalent" of the weight-by-weight measurement authorized by the per se regulations, which, as noted above, adopt the "equivalent" standard of the criminal regulations.

The plaintiff maintains that, because the Intoxilyzer does not directly measure the weight of the alcohol in blood of a particular weight, the Intoxilyzer does not measure blood alcohol content "by weight," as required by § 14-227b (o) of the per se statute. Paraphrased, the plaintiff argues that the Intoxilyzer's interpolation from a weight per volume measurement to a weight per weight measurement does not comply with § 14-227b (o) of the per se statute.

In both *State* v. *Pilotti*, 99 Conn. App. 563, 568, 914 A.2d 1067, cert. denied, 282 Conn. 903, 919 A.2d 1037 (2007), and *State* v. *Tietjen*, 105 Conn. App. 59, 64, 935 A.2d 1033 (2007), the Appellate Court observed that § 14-227a (d) of the criminal statute clearly contemplates the testing of breath. In order for a test of alcohol in breath to reflect the percentage of alcohol in blood,

a conversion is necessary. Accordingly, a blood alcohol content measure of breath, as permitted by the criminal statute, is, of necessity, an "equivalent" of the blood alcohol content measure of blood.

In *Pilotti*, the evidence of "elevated blood alcohol content . . . by weight" came from Intoxilyzer results. The same Dr. Powers who testified before the hearing officer on remand testified in *Pilotti* that an Intoxilyzer directly measures only the weight of alcohol in a volume of breath. *State* v. *Pilotti*, supra, 99 Conn. App. 569.

By upholding the conviction in *Pilotti*,[3] the Appellate Court implicitly approved the use of the Intoxilyzer to measure blood alcohol content by weight under the criminal statute. Like the definition of elevated blood alcohol content in the criminal statute, the definition of elevated blood alcohol content in § 14-227b (o) of the per se statute is based on "alcohol, by weight." Because the Intoxilyzer is capable of measuring blood alcohol content by weight pursuant to the criminal statute, under *Pilotti* and *Tietjen* it is capable of measuring blood alcohol content by weight under the per se statute.

At the time of the arrests in *Pilotti* and *Tietjen*, the criminal regulations did not permit a measurement of blood alcohol content which was "equivalent" to a measurement of blood alcohol content by weight. Nonetheless, the Appellate Court upheld the *Pilotti* and *Tietjen* convictions, which were based on Intoxilyzer results. By doing so, the Appellate Court implicitly determined that an "equivalent" measurement of blood alcohol content complied with the "by weight" directive of § 14-227a (a) of the criminal statute, even before the criminal and per se regulations were amended to permit "equivalent" measurements.

---

[3] On the same facts, the *Tietjen* conviction was also upheld.

After the Intoxilyzer had been used to measure blood alcohol content in *Pilotti* and *Tietjen*, the criminal regulations were amended to permit equivalent measurements of blood alcohol content. Because the per se regulations piggyback on the criminal regulations, the per se regulations now permit equivalent measurements of blood alcohol content by the Intoxilyzer. Under *Giglio* v. *American Economy Ins. Co.*, 278 Conn. 794, 806, 900 A.2d 27 (2006), those regulations are presumed valid.

On the basis of *Pilotti* and *Tietjen*, as well as the presumption of validity of the "equivalent" per se regulation, it is held that the plaintiff's burden has not been met.

V

CONCLUSION

Each of these appeals is dismissed.