ADAM STASH *v.* COMMISSIONER OF
MOTOR VEHICLES
(SC 18534)

JAMES R. MARSH III *v.* COMMISSIONER OF
MOTOR VEHICLES
(SC 18535)

Rogers, C. J., and Norcott, Katz, Vertefeuille,
Zarella and McLachlan, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued April 27—officially released June 29, 2010

*James J. Ruane*, with whom were *Teresa M. Dinardi*, and, on the brief, *Sean P. Barrett*, for the appellants (plaintiffs).

*Eileen Meskill*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

PER CURIAM. The plaintiffs in each of these consolidated appeals, Adam Stash and James R. Marsh III,[1] commenced administrative appeals in the trial court challenging the decisions[2] of the defendant, the commissioner of motor vehicles, to suspend their motor vehicle operator's licenses (license) for ninety days after Stash and Marsh each failed a test utilized to detect the presence of alcohol in a subject's blood. General Statutes § 14-227b (e).[3] Following separate hearings on each matter, the trial court upheld the decisions of the defendant and dismissed the plaintiffs' appeals.[4] The plaintiffs

[1] Stash and Marsh appealed from the judgments of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Prior to that transfer, the Appellate Court had granted Stash's motion to consolidate his appeal with Marsh's appeal. The two appeals raise the same issue. For convenience, we refer to Stash and Marsh collectively as the plaintiffs and individually by name.

[2] Pursuant to General Statutes § 4-183 (a), "[a] person who has exhausted all administrative remedies available within [an] agency and who is aggrieved by a final decision may appeal to the Superior Court . . . ."

[3] Pursuant to § 14-227b (e) (1), any person whose motor vehicle operator's license is suspended is entitled to a hearing before the defendant prior to the effective date of the suspension. The hearing is limited to a determination of the following issues: "(1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to [a chemical] test or analysis [of his blood, breath or urine] *or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content*; and (4) was such person operating the motor vehicle. . . ." (Emphasis added.) General Statutes § 14-227b (g). Although § 14-227b was amended by No. 09-187, § 63, of the 2009 Public Acts, those amendments have no bearing on the merits of this appeal. For convenience, we refer to the current 2009 revision of the statute.

The present appeals challenge the findings of the hearing officer, who was appointed by the defendant to hear these matters, as to the third issue in § 14-227b (g), specifically, that the results of chemical tests of the plaintiffs' breath indicated that they had an elevated blood alcohol content.

[4] When Marsh commenced his administrative appeal, he filed a motion to join his appeal with the pending consolidated administrative appeals of

claim that the trial court improperly concluded that there was sufficient proof that they had operated their motor vehicles while having the statutorily proscribed elevated blood alcohol content because a mathematical calculation is necessary to convert the results of a chemical analysis test performed on breath into the blood alcohol content ratio contemplated by § 14-227b (o),[5] and because the test results are subject to some margin of error. We affirm the judgments of the trial court.

On April 12, 2006, Stash was arrested and charged with violating General Statutes § 14-227a.[6] On April 28, 2006, the defendant notified Stash that his license would be suspended for ninety days because he had failed a chemical alcohol test. The test had been administered using the Intoxilyzer 5000 EN (Intoxilyzer), a device that measures the presence of alcohol in a subject's

Stash and several other individuals who are not involved in the present case (Stash's case). Following the dismissal of Stash's case, the trial court granted Marsh's motion to join Stash's case, then dismissed Marsh's appeal for the reasons stated in the memorandum of decision disposing of Stash's case. See *Stash* v. *Commissioner of Motor Vehicles*, 51 Conn. Sup. 452, 1 A.3d 275 (2008). Although Marsh is not a named party in that decision, the trial court's reasoning in Stash's case applies to Marsh's case as well.

[5] Section 14-227b authorizes the defendant to suspend a person's license or operating privileges when that person operates his motor vehicle while having an "elevated blood alcohol content . . . ." General Statutes § 14-227b (d); see also General Statutes § 14-227b (e) (1). For purposes of § 14-227b, " 'elevated blood alcohol content' " is defined, in relevant part, as "a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . ." General Statutes § 14-227b (o) (1).

[6] Section 14-227a (a) criminalizes the act of operating a motor vehicle while under the influence of intoxicating liquor or drugs or both. A person may be found to have committed the foregoing offense if he operates a motor vehicle while having an elevated blood alcohol content. As in § 14-227b, an " 'elevated blood alcohol content' " is defined for purposes of § 14-227a as "a ratio of alcohol in the blood of [a] person that is eight-hundredths of one per cent or more of alcohol, by weight . . . ." General Statutes § 14-227a (a). Section 14-227a was amended by No. 09-187 of the 2009 Public Acts, but those amendments have no bearing on the merits of this appeal. For convenience, we refer to the current 2009 revision of the statute.

exhaled breath. Two separate Intoxilyzer readings taken thirty-five minutes apart had indicated that Stash's blood alcohol content was 0.166 percent and 0.145 percent, at both times exceeding the statutory limit of 0.08.

Similarly, on November 6, 2008, Marsh was taken into custody for allegedly violating § 14-227a and, on November 28, 2008, he was notified that his license would be suspended for ninety days because he had failed a chemical alcohol test. Two separate Intoxilyzer readings taken thirty-three minutes apart had indicated that Marsh's blood alcohol content was 0.177 percent and 0.158 percent, at both times exceeding the statutory limit of 0.08 percent.

The plaintiffs separately requested hearings pursuant to § 14-227b (e). Following those hearings, the defendant upheld the suspension of their licenses, concluding that the Intoxilyzer results indicated that the plaintiffs had operated their motor vehicles while having an elevated blood alcohol content. Thereafter, the plaintiffs individually appealed from the defendant's decisions to the trial court.[7]

In their appeals, the plaintiffs argued, inter alia, that the Intoxilyzer results were inadequate to prove that they had an elevated blood alcohol content because

[7] Stash and Marsh each sought, and received, a stay of the suspension of his license pending the outcome of the proceedings in the trial court. Stash thereafter sought, and received, an extension of the stay of his license suspension pending the outcome of this appeal. The record does not indicate that Marsh secured a similar extension. See Practice Book §§ 61-11 (b) and 61-12. Accordingly, it appears likely that Marsh's license suspension already has expired, thereby rendering this court unable to afford him any practical relief. Marsh's appeal is not moot, however, due to the collateral consequences that potentially are attendant to license suspensions, namely, the increasing penalties that are imposed upon successive violations of § 14-227b. See General Statutes § 14-227b (i); see also *Schallenkamp* v. *DelPonte*, 29 Conn. App. 576, 580 n.6, 616 A.2d 1157 (1992), aff'd, 229 Conn. 31, 639 A.2d 1018 (1994).

the device produced results expressed on a weight of alcohol to volume of breath basis rather than a weight of alcohol to weight of blood basis, as required by § 14-227b (o). According to the plaintiffs, there was no evidence of the weight of alcohol present in 100 grams of their blood, as required to establish an elevated blood alcohol content pursuant to the statutory definition.

The trial court remanded Stash's appeal to the defendant's hearing officer for the purpose of taking additional expert testimony concerning the authorization, use and function of the Intoxilyzer. After conducting an additional hearing, the hearing officer made certain findings of fact, largely crediting the testimony of the defendant's expert witness, Robert Powers, the director of the controlled substances toxicology laboratory at the department of public safety.

Stash thereafter filed an amended appeal in which he reiterated his claim that there was no evidence of the weight of alcohol per 100 grams of his blood as statutorily required, because the readings produced by the Intoxilyzer were expressed as a weight of alcohol to volume of breath ratio. Stash also argued that, as a general matter, Intoxilyzer readings were not always accurate.[8] On December 23, 2008, the trial court dismissed Stash's appeal after finding that Powers' testimony constituted substantial evidence in support of the hearing officer's findings. The trial court subsequently dismissed Marsh's appeal on the same rationale. See footnote 4 of this opinion. The trial court disagreed that

---

[8] In this regard, Stash argued that the hearing officer improperly failed to credit the testimony of Michael Hlastala, an expert in lung physiology, that he had presented at the hearing on remand. Stash did not attempt to demonstrate, however, that his own Intoxilyzer readings were inaccurate or that they fell within any margin of error testified to by Hlastala. Stash also suggested that use of the Intoxilyzer was unconstitutional because the device was more likely to produce inaccurate readings with female or African-American test subjects. The record indicates, however, that Stash is neither female nor African-American.

the measurement produced by an Intoxilyzer did not comport with the requirement of § 14-227b (o) (1) that "a ratio of alcohol in the blood . . . that is eight-hundredths of one per cent or more of alcohol, by weight" be proven.[9] Thereafter, Stash filed a motion for reargument and reconsideration, which the trial court denied.

The plaintiffs claim on appeal to this court that the defendant failed to show that they had an elevated blood alcohol content as required by § 14-227b (o). Specifically, they argue that the defendant improperly used a weight of alcohol to volume of breath ratio to establish that they had an elevated blood alcohol content when § 14-227b (o) requires proof of a weight of alcohol to weight of blood ratio. According to the plaintiffs, there was no evidence of any mathematical calculation or other conversion to transform the weight to volume Intoxilyzer results in their cases into weight to weight ratios. The plaintiffs also argue that the trial court improperly failed to credit certain evidence in the record as to the inaccuracy of Intoxilyzer results.

We note the applicable standard of review. "[J]udicial review of [a] commissioner's action is governed by the Uniform Administrative Procedure Act [General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the

---

[9] The trial court relied on *State* v. *Pilotti*, 99 Conn. App. 563, 568, 914 A.2d 1067, cert. denied, 282 Conn. 903, 919 A.2d 1037 (2007), and *State* v. *Tietjen*, 105 Conn. App. 59, 64, 935 A.2d 1033 (2007), appeals from criminal convictions pursuant to § 14-227a, in which the Appellate Court rejected claims similar to those raised by the plaintiffs.

weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Sengchanthong* v. *Commissioner of Motor Vehicles*, 281 Conn. 604, 609, 917 A.2d 942 (2007); see also General Statutes § 4-183 (j).

Our examination of the record on appeal, and the briefs and arguments of the parties, persuades us that the judgments of the trial court upholding the defendant's suspension of the plaintiffs' licenses should be affirmed. Because the trial court's memorandum of decision fully addresses the arguments raised in the present appeal, we adopt the trial court's well reasoned decision as a statement of the facts and the applicable law on these issues. *Stash* v. *Commissioner of Motor Vehicles*, 51 Conn. Sup. 452, 1 A.3d 275 (2008). It would serve no useful purpose for us to repeat the discussion therein contained. *Morrissey* v. *Yale University*, 268 Conn. 426, 428–29, 844 A.2d 853 (2004); *Stebbins* v. *Doncasters, Inc.*, 263 Conn. 231, 234–35, 819 A.2d 287 (2003); *Norfolk & Dedham Mutual Fire Ins. Co.* v. *Wysocki*, 243 Conn. 239, 241, 702 A.2d 638 (1997).

The judgments are affirmed.

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.