STATE OF CONNECTICUT *v.* JAMES RUSSELL HOOD
(AC 27586)

Flynn, C. J., and McLachlan and Gruendel, Js.

Argued November 26, 2007—officially released March 4, 2008

*Teresa M. Dinardi*, with whom were *James O. Ruane* and, on the brief, *James J. Ruane*, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *David I. Cohen*, state's attorney, and, on the brief, *Ricki Goldstein*, special deputy assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, James Russell Hood, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes (Rev. to 2003) § 14-227a.[1] The defendant claims that the trial court improperly (1) admitted into evidence the breath test results from the Intoxilyzer 5000 because they were not in compliance with regulations and statutes and because the court failed to hold a *Porter* hearing[2] to ascertain the reliability of the Intoxilyzer 5000 test results, (2) admitted testimony regarding

[1] General Statutes (Rev. to 2003) § 14-227a (a) provides in relevant part: "A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle . . . (1) while under the influence of intoxicating liquor or any drug or both, *or* (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight." (Emphasis added.)

[2] See *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998).

the number of alcoholic drinks the defendant had to have consumed in order to reach a blood alcohol content of 0.143 percent and (3) denied the defendant's motion for a judgment of acquittal as to count one of the information. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to the defendant's appeal. On July 29, 2004, Officer Robert McKiernan of the Greenwich police department conducted a traffic stop after he heard the defendant's car screech off the highway and then witnessed it swerve over a yellow line several times and finally come to a stop in a church parking lot. McKiernan smelled alcohol on the defendant's breath and observed that his speech was slurred and that his eyes were watery and glassy. After the defendant produced his license and registration, McKiernan conducted a "finger counting" task with which the defendant struggled. At this point, McKiernan returned to his vehicle and called for another officer to come to the scene. He testified that it was department policy for two officers to be present when conducting field sobriety tests in order to witness the tests and for safety reasons. Officer Jeff Loock responded to the call.

After Loock arrived at the scene, McKiernan ordered the defendant out of his vehicle so that he could conduct field sobriety tests. After conducting the tests, McKiernan concluded that the defendant was under the influence of alcohol and arrested him. The defendant was transported to the police station, where he agreed to take two breath tests. McKiernan used the Intoxilyzer 5000 to conduct the breath tests. The first test was administered at 12:29 a.m. and resulted in a reading of 0.138. The second test was administered at 1:04 a.m. and resulted in a reading of 0.143. Thereafter, the state charged the defendant in a two count information with having violated subdivisions (a) (1) and (2) of § 14-227a,

which are known, respectively, as the behavioral and per se subdivisions of that statute. See *State* v. *Barber*, 42 Conn. App. 589, 590, 681 A.2d 348 (1996). The behavioral subdivision prohibits a person from operating a motor vehicle while under the influence of intoxicating liquor, and the per se subdivision prohibits a person from operating a motor vehicle while he has a blood alcohol content of 0.08 percent or greater by weight. A conviction under either subdivision is a conviction under § 14-227a. See General Statutes § 14-227a (a) (1) and (2).

Prior to trial, the defendant filed several motions. After hearing testimony on a motion in limine and a motion to suppress, which both sought to exclude from evidence the Intoxilyzer 5000 test results, the court denied the motions. A review of the record reveals that a motion in limine requesting that the court conduct a *Porter* hearing for the Intoxilyzer 5000 was filed by the defendant but was never argued. Nevertheless, in response to the state's inquiry as to whether all motions in the case had been denied, except as to the state's concession to call the finger count test a task, the court replied that it was its recollection that all other motions had been denied. Counsel for both the defendant and the state agreed, and the court instructed the clerk to make the appropriate notation on all of the motions.

After a trial, the jury found the defendant guilty of the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both pursuant to § 14-227a by finding him guilty of having violated both the behavioral subdivision of the statute, subdivision (a) (1), and the per se subdivision of the statute, subdivision (a) (2). After a subsequent trial to the court on a part B information charging the defendant as a second offender of § 14-227a, the court found the defendant guilty and sentenced the defendant as a second offender, in accordance with § 14-227a (g) (2), to

serve an effective eighteen months imprisonment, execution suspended after 120 days, and two years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion by permitting the breath test results from the Intoxilyzer 5000 to be admitted into evidence when the results were not in compliance with the regulations adopted under § 14-227a (d), as required by § 14-227a (b) (3). "[T]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Pilotti*, 99 Conn. App. 563, 567, 914 A.2d 1067, cert. denied, 282 Conn. 903, 919 A.2d 1037 (2007).

This claim is governed by our decision in *State* v. *Pilotti*, supra, 99 Conn. App. 570, in which this court held that "General Statutes § 14-227a (b) requires the state to establish as a foundation for the admissibility of chemical analysis evidence that the test was performed with equipment approved by the department of public safety. It does not require . . . that the device satisfy the criteria set forth in the regulations." See also *State* v. *Tietjen*, 105 Conn. App. 59, 63–64, 935 A.2d 1033 (2007) (§ 14-227a [b] requires state to establish as foundation for admissibility of test results that equipment was approved by department of public safety and did not require that equipment satisfy criteria set forth in regulations). As there was evidence presented at trial

that the Intoxilyzer 5000 was approved by the department of public safety,[3] the court did not abuse its discretion in allowing the breath test results to be entered into evidence.

The defendant next claims that the court abused its discretion when it admitted into evidence the Intoxilyzer 5000 breath test results without holding a *Porter* hearing. Although a motion in limine regarding the necessity of holding a *Porter* hearing appears in the record, a review of the transcript reveals that the motion was denied without argument and without a memorandum of decision. It was the defendant's responsibility to provide this court with an adequate record for review by filing a notice of noncompliance pursuant to Practice Book § 64-1 (b) or by seeking an articulation of the court's reasoning for denying the motion. See Practice Book § 66-5. Because he did not do so, the record is not adequate for our review. See *Manifold* v. *Ragaglia*, 94 Conn. App. 103, 125, 891 A.2d 106 (2006) ("[w]here the trial court's decision is ambiguous, unclear or *incomplete*, an appellant must seek an articulation . . . or this court will not review the claim" [emphasis in original; internal quotation marks omitted]).

## II

The defendant also claims that the court abused its discretion when it admitted expert testimony about how many alcoholic drinks the defendant had to have consumed in order to reach the blood alcohol content of

---

[3] McKiernan testified that the Intoxilyzer 5000 was approved by the department of public safety. In addition, a letter dated January 7, 2004, from the department of public safety to the division of scientific services was entered into evidence. It indicated that "the Intoxilyzer 5000 . . . was checked and recertified on October 17, 2003 by the Controlled Substances/Toxicology Laboratory, Department of Public Safety . . . . Breath analyses instruments are examined and certified by the Department of Public Safety prior to being placed in operation and after being repaired or recalibrated. There is no requirement for annual recertification."

0.143 as reported by the defendant's second breath test result from the Intoxilyzer 5000. The defendant claims that this evidence was irrelevant. To convict the defendant of operating a motor vehicle while having an elevated blood alcohol content, the state had to prove, inter alia, that the defendant's blood alcohol content at the time he was operating his motor vehicle was at or above the legal limit of 0.08. See General Statutes § 14-227a (a) (2). The defendant's statement to police on the night he was arrested was that he had consumed only four shots of gin between the hours of 5 p.m. and 9 p.m. To refute this statement and discredit the defendant, the state sought to introduce expert testimony as to the number of alcoholic drinks the defendant had to have consumed to reach his highest blood alcohol content reading of 0.143 at 1:04 a.m.

Robert Powers, a toxicologist and director of the controlled substance toxicology laboratory for the department of public safety, testified that if the defendant had ingested four shots of gin between the hours of 5 p.m. and 9 p.m., they would have been metabolized fully by 10 p.m. and that there would be no expectation that the alcohol would be in the defendant's system two hours later. He further testified that, given an average size individual like the defendant, he would expect the individual to generate a blood alcohol content of approximately 0.02 per drink. Therefore, he would expect that to generate a blood alcohol content of 0.143, the defendant had to have consumed seven alcoholic drinks. In addition, Powers testified that "because we've got an observation of driving at 11:30, and our first reading is an hour later, I need to throw in one more drink to account for that hour of metabolism; so, I'm looking at eight drinks." Next, the state asked Powers if it was possible for the defendant to have a blood alcohol content below the legal limit when he was driving at 11:30 p.m., considering that he had to have consumed eight alcoholic drinks to reach a blood alcohol

content of 0.143 at 1:04 a.m. Powers testified that it would be possible for the defendant's blood alcohol content to be below the legal limit while he was driving if the defendant consumed all eight alcoholic drinks immediately before driving, such that the alcohol did not have a chance to absorb to the point that it raised his blood alcohol content at or above the legal limit while he was driving. The defendant objected to Powers' testimony on the ground of relevancy, and the court overruled the objection.

"[E]vidence is relevant if it has a tendency to establish the existence of a material fact. . . . Relevant evidence is evidence that has a logical tendency to aid the trier [of fact] in the determination of an issue." (Internal quotation marks omitted.) *State* v. *Mungroo*, 104 Conn. App. 668, 681, 935 A.2d 229 (2007), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008). The determination of whether a matter is relevant is an evidentiary ruling. As such, it will be set aside "only when there has been a clear abuse of discretion. . . . [B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) *Rosier* v. *Rosier*, 103 Conn. App. 338, 341, 928 A.2d 1228, cert. denied, 284 Conn. 932, 934 A.2d 247 (2007).

The per se subdivision of the statute requires the finding of an elevated blood alcohol content at the time of vehicle operation to support a finding of guilt. For purposes of the statute, elevated blood alcohol content means "a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight." General Statutes (Rev. to 2003) § 14-227a (a). The defendant argues that the number of alcoholic drinks consumed by an individual is not the

relevant inquiry and, as such, is irrelevant.[4] A review of our case law does not reveal that expert testimony regarding the number of alcoholic drinks an individual had to have consumed in order to reach a particular blood alcohol level is irrelevant. Because the testimony in this case was elicited to discredit the defendant's statement that he had had only four shots of gin and because the court's evidentiary rulings are entitled to great deference, we conclude that it was not improper for the court to allow Powers' testimony into evidence.

## III

Last, the defendant claims that the court improperly denied his motion for a judgment of acquittal on count one of the information, which alleged that the defendant violated the behavioral subdivision of § 14-227a (a). In light of the foregoing analysis, we do not reach this claim. Even if the court improperly denied the defendant's motion for a judgment of acquittal as to count one of the information, the jury also found the defendant guilty of count two of the information, which alleged that the defendant had violated the per se subdivision of § 14-227a (a). Because either finding was sufficient to support the defendant's conviction of the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both,[5] and because we conclude that there was no impropriety in the court's evidentiary rulings regarding the second count, we need not reach this claim. Cf. *State* v. *Pulaski*, 71 Conn. App. 497, 505–506, 802 A.2d 233 (2002) (this court need not reach claim that trial court improperly

---

[4] The defendant relies on *Tuttle* v. *Russell*, 2 Day (Conn.) 201 (1805), for the proposition that "[i]ntoxication must be proven by direct evidence or by the acts and conduct of the witnesses, not by the quantity of spirituous liquors, which were previously ingested." Our Supreme Court's opinion in that case, which consisted of one line affirming the decision of the trial court, is not instructive concerning this proposition.

[5] See footnote 1.

 

denied motion for judgment of acquittal for operating motor vehicle while under influence of intoxicating liquor in violation of § 14-227a [a] [2] when sufficient evidence was presented to find defendant had operated motor vehicle while under influence of intoxicating liquor in violation of § 14-227a [a] [1]).

The judgment is affirmed.

In this opinion the other judges concurred.