## MUNSUR ABDULLAH v. COMMISSIONER OF CORRECTION
### (AC 31039)

Gruendel, Robinson and Borden, Js.

Argued April 8—officially released August 10, 2010

*Jennifer C. Vickery*, special public defender, for the appellant (petitioner).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BORDEN, J. The petitioner, Munsur Abdullah, appeals, following a grant of certification to appeal by the habeas court, from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. The petition asserts that this state's judicial procedures for prosecuting and sentencing criminal defendants result in disproportionately longer sentences for black defendants who refuse to plea bargain than for white defendants who refuse to plea bargain. The petitioner claims that the court, in dismissing his petition, concluded improperly that this alleged system of racial disparity did not violate his right to equal protection as guaranteed by the fourteenth amendment to the United States

constitution and article first, § 20, of the Connecticut constitution.[1] We disagree and, accordingly, affirm the judgment of the habeas court.[2]

In *State* v. *Townsend*, 211 Conn. 215, 558 A.2d 669 (1989), the petitioner's direct appeal to our Supreme Court, the facts underlying his criminal conviction were set forth as follows. On February 18, 1986, the petitioner entered the Gary Crooks Center in Bridgeport carrying a rifle under his coat and searching for the victim, Joseph Kelly. The petitioner found and shot the victim, who died as a result of his gunshot wounds. Upon his arrest, the petitioner admitted to shooting the victim and stated that, as a Muslim, he was permitted to do so under Muslim law because the victim had insulted his wife. See id., 216. Following a jury trial, the petitioner was convicted of murder in violation of General Statutes § 53a-54a. He was sentenced by the court to life imprisonment. Our Supreme Court affirmed the judgment of conviction. Id.

The petitioner thereafter brought the habeas corpus action underlying this appeal.[3] In his second amended

---

[1] The equal protection clause of the fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."

The constitution of Connecticut, article first, § 20, as amended by articles five and twenty-one of the amendments, provides in relevant part: "No person shall be denied the equal protection of the law nor be subjected to segregation . . . ."

[2] In his habeas petition, the petitioner also asserted that the alleged system of racial disparity violated his rights under the International Convention on the Elimination of All Forms of Racial Discrimination, which was rejected by the court. Because this claim is not raised or briefed on appeal, it is deemed abandoned. See *Morant* v. *Commissioner of Correction*, 117 Conn. App. 279, 283 n.2, 979 A.2d 507, cert. denied, 294 Conn. 906, 982 A.2d 1080 (2009).

[3] As noted by the court, this petition for a writ of habeas corpus is one of numerous legal actions that have been filed by the petitioner, including several under his former name, Lawrence Townsend.

petition, filed February 24, 2009, the petitioner claimed that "Connecticut's judicial system, including its procedures for charging, negotiating and/or processing criminal cases, systematically result[s] in a disproportionately greater 'trial penalty' to black defendants, including the petitioner, who refuse the plea bargain sentences offered to them than to white defendants who refuse the plea bargain sentences offered to them." This system, according to the petitioner, discriminates on the basis of race against black defendants because "[t]he disparity in the sentences received by black defendants versus those received by white defendants is statistically not explainable by any other variable than race." The petitioner claimed that these unexplainable disparities are causally related to state actions and therefore violated his federal and state equal protection rights on the ground that his "sentence is longer than it would have been absent the influence of the racially discriminatory aspects of Connecticut's judicial system." His petition also referenced certain reports and statistical analysis concerning Connecticut's incarcerated population that he claimed detail the significant impact race has had on the sentencing of criminal defendants in Connecticut. Furthermore, he alleged, his right to equal protection was violated "[w]ithout regard to whether the [s]tate of Connecticut . . . or any individual acting [therefor], has displayed purpose or intent [to] create or [to] maintain these disparities . . . ."

Citing Practice Book § 23-29 (2),[4] the respondent, the commissioner of correction, filed a motion to dismiss the petition for failure to state a claim, which was granted by the habeas court. The respondent claimed,

[4] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the [habeas] petition . . . if it determines that . . .

"(2) the petition . . . fails to state a claim upon which habeas corpus relief can be granted . . . ."

and the court agreed, that dismissal was warranted because the petitioner had failed to allege in his habeas corpus petition the existence of any purposeful discrimination. In its memorandum of decision, the court concluded that the petitioner's federal equal protection claim was governed by the United States Supreme Court's holding in *McCleskey* v. *Kemp*, 481 U.S. 279, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987), which demands that, in order to prevail, a party alleging an equal protection violation under the fourteenth amendment must demonstrate the existence of purposeful discrimination. Additionally, the habeas court concluded that the petitioner was not relieved under the Connecticut constitution of his burden to plead facts that demonstrated that his sentence was the result of purposeful discrimination. The court, accordingly, granted the respondent's motion to dismiss the petition for failure to state a claim for which habeas corpus relief may have been granted. This appeal followed. Additional facts will be set forth as necessary.

We begin our analysis by setting forth the applicable standard of review. "The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The conclusions reached by the [habeas] court in its decision to dismiss the habeas petition are matters of law, subject to plenary review. . . . Thus, [w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Young* v. *Commissioner of Correction*, 104 Conn. App.

188, 193, 932 A.2d 467 (2007), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008).

"It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised." (Internal quotation marks omitted.) *Arriaga* v. *Commissioner of Correction*, 120 Conn. App. 258, 262–63, 990 A.2d 910 (2010).

## I

### FEDERAL CONSTITUTIONAL CLAIM

In his amended habeas corpus petition, the petitioner alleged that a system of racial disparity underlying Connecticut's judicial procedures for prosecuting and sentencing criminal defendants violated his right to equal protection as guaranteed under the fourteenth amendment to the United States constitution. On appeal, he contends that his petition was sufficient to survive a motion to dismiss for failure to state a claim even though he states expressly in his pleading that his constitutional claim exists "[w]ithout regard to whether the [s]tate of Connecticut . . . or any individual acting [therefor], has displayed purpose or intent [to] create or [to] maintain these disparities . . . ." We disagree.

As set forth by the court in its memorandum of decision, the petitioner's federal equal protection claim is governed by the Unites States Supreme Court's decision

in *McCleskey* v. *Kemp*, supra, 481 U.S. 279. In *McCleskey*, the petitioner, a black man, had been convicted of two counts of armed robbery and one count of murder in Fulton County, Georgia, and thereafter sentenced to death. Id., 283–85. The United States Supreme Court reviewed the petitioner's habeas corpus action, in which he claimed that the Georgia capital sentencing statute violated the equal protection clause of the fourteenth amendment because it was administered in a racially discriminatory manner. Id., 285–86. In support of his claim, the petitioner offered a statistical study that demonstrated that Georgia defendants whose victims were white were 4.3 times as likely to receive a death sentence as those whose victims were black (Baldus study). Id., 286–87. He failed, however, to offer any other specific evidence that would support an inference that racial bias played a role in his sentence. Id., 292–93.

In denying his claim, the Supreme Court held that the petitioner's reliance on the Baldus study was insufficient to support an inference that the imposition of the death penalty in his particular case was the product of purposeful discrimination. Id., 297. The court elucidated: "Our analysis begins with the basic principle that a defendant who alleges an equal protection violation has the burden of proving 'the existence of purposeful discrimination.' *Whitus* v. *Georgia*, 385 U.S. 545, 550 [87 S. Ct. 643, 17 L. Ed. 2d 599] (1967). A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination 'had a discriminatory effect' on him. *Wayte* v. *United States*, 470 U.S. 598, 608 [105 S. Ct. 1524, 84 L. Ed. 2d 547] (1985). Thus, to prevail under the Equal Protection Clause, [the petitioner] must prove that the decisionmakers in *his* case acted with discriminatory purpose." (Emphasis in original.) *McCleskey* v. *Kemp*, supra, 481 U.S. 292; see also *Knight* v. *Dept. of Public Health*, 275 F.3d 156, 166 (2d Cir. 2001) (appellants must prove decision makers in

their cases purposely discriminated); *Ricketts* v. *Hartford*, 74 F.3d 1397, 1407 (2d Cir.) ("[i]t is well established that a claimant under the Fourteenth Amendment's Equal Protection Clause . . . must establish intentional discrimination"), cert. denied, 519 U.S. 815, 117 S. Ct. 65, 136 L. Ed. 2d 26 (1996).

The petitioner, in his amended habeas corpus petition, has failed to allege specific facts that tend to support an inference that any of the decision makers who were involved in his particular sentencing acted with a discriminatory purpose. In fact, as set forth previously, he expressly indicates in his pleading that his alleged equal protection violation exists "[w]ithout regard to whether the [s]tate of Connecticut . . . or any individual acting [therefor], has displayed purpose or intent" to discriminate.[5]

In *McCleskey*, the United States Supreme Court reiterated the well established principle that a petitioner seeking to prove a violation of his federal equal protection rights must demonstrate purposeful discrimination

---

[5] The petitioner's reliance on *Castaneda* v. *Partida*, 430 U.S. 482, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977), for the proposition that statistical disparities are sufficient, under federal equal protection jurisprudence, to create an inference of intentional discrimination is misplaced. In *Castaneda*, the United States Supreme Court accepted mathematical disparities demonstrating a substantial underrepresentation of an identifiable group as proof adequate to establish a prima facie showing of an equal protection violation in grand jury selection. Id., 496. The *McCleskey* court, however, expressly disavowed similar statistical analysis as proof of intentional discrimination in capital sentencing cases, explaining: "[T]he application of an inference drawn from the general statistics to a specific decision in a trial and sentencing simply is not comparable to the application of an inference drawn from general statistics to a specific venire-selection . . . [because] the statistics relate to fewer entities, and fewer variables are relevant to the challenged decisions." *McCleskey* v. *Kemp*, supra, 481 U.S. 294–95. The court added that "[b]ecause discretion is essential to the criminal justice process, [it] would demand exceptionally clear proof before [it] would infer that the discretion has been abused." Id., 297. Thus, for purposes of federal equal protection purposes, *McCleskey*, rather than *Castaneda*, governs the petitioner's claim.

on the part of the decision makers in his case. The court announced further that the statistical study proffered by the petitioner in that case was "clearly insufficient to support an inference" of intentional discrimination. *McCleskey* v. *Kemp*, supra, 481 U.S. 297. Because the petitioner has specifically disclaimed the presence of purposeful discrimination in either his particular sentencing or systemically, we conclude that the habeas court properly applied the principles enunciated in *McCleskey* to dismiss the petitioner's federal equal protection claim.

The petitioner urges us to decline to apply *McCleskey* to his federal claim, asserting that it is an outlier without a firm grounding in equal protection jurisprudence, that certain recent United States Supreme Court decisions indicate a willingness on the part of that court to overrule "precedents that lack firm grounding in due process and equal protection jurisprudence, and that *McCleskey* is such a case." In making this assertion, the petitioner, in addition to relying on *Castaneda* v. *Partida*, 430 U.S. 482, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977); see footnote 5 of this opinion; brings to our attention certain law review articles criticizing *McCleskey*, other cases that involve the doctrine of stare decisis and a portion of his brief arguing that faith in our judicial system is undermined by *McCleskey*. The short answer to this argument is that such a course of judicial conduct, namely, to decline to follow United States Supreme Court precedent with regard to an issue of federal law, is simply beyond our authority. *State* v. *Marquez*, 291 Conn. 122, 125 n.4, 967 A.2d 56, cert. denied, 558 U.S. 895, 130 S. Ct. 237, 175 L. Ed. 2d 163 (2009).

## II

### STATE CONSTITUTIONAL CLAIM

We turn next to the petitioner's claim that his sentence violates article first, § 20, of the Connecticut constitution. The petitioner claims that he was not required

to allege purposeful discrimination in his habeas petition in order to assert an equal protection violation under our state constitution. We reject the petitioner's claim.

It is well settled that, as a general matter, this state's constitutional equal protection jurisprudence follows that of the federal constitution. See *Broadley* v. *Board of Education,* 229 Conn. 1, 8 n.15, 639 A.2d 502 (1994); *Franklin* v. *Berger,* 211 Conn. 591, 594 n.5, 560 A.2d 444 (1989); *Keogh* v. *Bridgeport,* 187 Conn. 53, 66, 444 A.2d 225 (1982). Indeed, in our Supreme Court's most recent equal protection case under the state constitution, no party claimed that there was any difference between the two, and the court accepted that analytical rubric. See *Kerrigan* v. *Commissioner of Public Health,* 289 Conn. 135, 149 n.13, 957 A.2d 407 (2008). Those cases would, at least in the first instance, suggest that, as under the federal constitution, a claim of equal protection under the state constitution would require an allegation and proof of purposeful or intentional discrimination.

It also is well established, however, that "federal constitutional and statutory law establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights. . . . Furthermore, although we often rely on the United States Supreme Court's interpretation of the amendments to the constitution of the United States to delineate the boundaries of the protections provided by the constitution of Connecticut, we have also recognized that, in some instances, our state constitution provides protections beyond those provided by the federal constitution, as that document has been interpreted by the United States Supreme Court. . . . The analytical framework by which we determine whether, in any given instance, our state constitution affords broader protection to our

citizens than the federal constitutional minimum is well settled." (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 509, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007). In *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), our Supreme Court set forth a six factor test for analyzing independent claims under the constitution of Connecticut.[6]

"The *Geisler* factors serve a dual purpose: they encourage the raising of state constitutional issues in a manner to which the opposing party—the state or the defendant—can respond; and they encourage a principled development of our state constitutional jurisprudence." (Internal quotation marks omitted.) *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 271, 990 A.2d 206 (2010).

The petitioner failed, in his opening brief, even to address or to cite *Geisler*. Thereafter, after the state in its responsive brief raised this issue, the petitioner in his reply brief claimed that he had performed in substance a *Geisler* analysis. We disagree.

The petitioner's principal brief is bereft of what could, under even a very broad interpretation of *Geisler*, be considered such an analysis. As we have indicated, the portion of the petitioner's principal brief on which he relies consists, instead, of law review articles criticizing *McCleskey*, a discussion of stare decisis and an argument that *McCleskey* undermines faith in our judicial system. This lack of a *Geisler* analysis is particularly significant because this is precisely the type of case in

---

[6] The six factors to be considered are: "(1) persuasive relevant federal precedents; (2) the text of the operative constitutional provisions; (3) historical insights into the intent of our constitutional forebears; (4) related Connecticut precedents; (5) persuasive precedents of other state courts; and (6) contemporary understandings of applicable economic and sociological norms, or as otherwise described, relevant public policies." (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, supra, 281 Conn. 510.

which a thorough *Geisler* analysis in the petitioner's principal brief, to which the respondent could respond in his brief, would have been useful in order for this court to make a thoughtful and principled decision on a significant claim under the state constitution.

Although "not every *Geisler* factor is relevant in all cases"; (internal quotation marks omitted) id.; the petitioner has failed to discuss, under any of those factors, how article first, § 20, of our state constitution provides greater protection in this situation than does the federal constitution. The petitioner has not offered, for example, any textual evidence of greater protection, nor has he provided historical constitutional analysis or referred to any economic or sociological considerations that may provide a basis for his claim that purposeful discrimination is not a required element of an equal protection claim under our state constitution. He also has failed to highlight sister state decisions or sibling approaches that buttress his argument.

The petitioner does argue that *Sheff* v. *O'Neill*, 238 Conn. 1, 678 A.2d 1267 (1996) (en banc), stands for the proposition that evidence of purposeful discrimination is not a required element of state equal protection claims brought pursuant to article first, § 20. This argument misses the mark.

In *Sheff*, the plaintiff schoolchildren claimed that racial and ethnic segregation between Hartford and the surrounding suburban public school districts had deprived them of an equal opportunity to a free public education. Id., 5–6. Our Supreme Court concluded that article eighth, § 1, in conjunction with article first, § 20, of our state constitution, require the state legislature to remedy both de jure and de facto segregation in public schools. Id., 29–30. Although the court rejected the argument that the plaintiffs in that case were

required to demonstrate intentional governmental discrimination in order to pursue their claim, this conclusion was reached, in part, on the reasoning that "[o]ur Connecticut constitution, [in] contrast [to the United States constitution], contains a fundamental right to education and a corresponding affirmative state obligation to implement and maintain that right." Id., 21. The court went on to address the express inclusion of the term "segregation" in article first, § 20, of our state constitution, and emphasized that it was "[t]he addition of this term to the text of our equal protection clause [that] distinguishes this case from others in which we have found a substantial equivalence between our equal protection clause and that contained in the United States constitution." Id., 27; see footnote 1 of this opinion. The holding in *Sheff* therefore was not premised on the equal protection clause of our state constitution but instead was decided on the clause in article first, § 20, that declares that Connecticut citizens shall not be subjected to segregation.[7]

One final comment. In its memorandum of decision, the court, in addition to concluding that the petitioner had failed to state a cognizable equal protection claim under both the federal and state constitutions, also stated that it would not infer the existence of purposeful discrimination from a statistical study that the division of public defender services was "disinclined to commission." This language, as far as we can ascertain from the record, stems from certain proceedings surrounding

---

[7] In *Wendt* v. *Wendt*, 59 Conn. App. 656, 685–86, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000), this court explained that the *Sheff* court "did not intend to allow state constitutional challenges on the basis of disparate impact, and it ruled as it did because it relied in part on the 'independent constitutional significance' of the word 'segregation' in article first, § 20, of our state constitution and the affirmative constitutional obligation to provide a substantially equal educational opportunity under article eighth, § 1."

a motion for discovery, filed by the petitioner in December, 2004, during the pendency of his habeas action, in which he asked the court to order the production of statistical data analyzing sentencing patterns in the state of Connecticut for the crime of murder. At the hearing on the petitioner's motion, the then deputy chief public defender testified that, because of the extraordinary cost associated with such a study, the public defender services commission, in her opinion, would be disinclined to conduct the study. The court thereafter denied the petitioner's motion.

On appeal, the petitioner claims that the court, in dismissing his habeas petition, relied improperly on evidence related to the state's disinclination to conduct such a study. He claims that the court should not have considered the denial of this motion in reaching its conclusion because the petitioner had shifted his litigation strategy and no longer required this statistical data. The petitioner seeks to prevail on this alleged impropriety pursuant to the plain error doctrine. See Practice Book § 60-5.

"As we often have stated, [p]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Atkins*, 118 Conn. App. 520, 535, 984 A.2d 1088 (2009), cert. denied, 295 Conn. 906, 989 A.2d 119 (2010). Applying these standards, we reject the petitioner's claim of plain error.

The judgment is affirmed.

In this opinion the other judges concurred.