STATE OF CONNECTICUT *v.* TYRONE BROWN
(AC 31595)

Gruendel, Beach and West, Js.

Argued June 3—officially released September 6, 2011

*G. Douglas Nash*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Marc R. Durso*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Tyrone Brown, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (1) and operating a motor vehicle while having an elevated blood alcohol content in violation of General Statutes § 14-227a (a) (2).[1] On appeal, the defendant claims that (1) the trial court erred by failing to sever the two counts of the information, (2) the court erred in admitting certain expert testimony that was cumulatively prejudicial, (3) the court abused its discretion when it excluded certain testimony of his wife pertaining to whether he was under the influence, (4) the court abused its discretion when it admitted certain evidence of the defendant's refusal to answer questions from the police and (5) there was insufficient evidence to prove under count two of the information that he was operating a motor vehicle while having an elevated blood alcohol content. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to the defendant's appeal. In the early morning hours of April 9, 2008, Jeffrey Morgan, a state police trooper, was traveling northbound on Interstate 95 when he heard over his radio a report that a slow moving vehicle was being driven erratically in the area of exit twenty-one. Morgan proceeded to that exit and observed a vehicle

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . ."

traveling at approximately thirty miles per hour. The posted speed limit was fifty-five miles per hour. Morgan followed the vehicle and further observed it swerve three times to the right, almost striking a guardrail.

Morgan effectuated a traffic stop at approximately 1:22 a.m. by turning on his vehicle's lights and siren and then, when the defendant did not stop his vehicle, by driving to the left of the vehicle. After finally successfully stopping the vehicle, he asked the defendant for his license and registration. The defendant informed Morgan that he did not have his license on his person but provided his license number from memory. Morgan noticed that the defendant's eyes were bloodshot and watery, his speech was slurred and an odor of alcohol emanated from his person and breath. Morgan further observed in the center console of the vehicle a plastic cup containing a tan liquid. When asked about the cup, the defendant did not answer. After asking the defendant to step out of the vehicle, Morgan administered three field sobriety tests. Morgan then arrested the defendant for operating under the influence and then transported him to the state police barracks in Bridgeport.

At the barracks, the defendant was read his *Miranda*[2] rights and agreed to take two breath tests using an Intoxilyzer 5000. The first test was conducted at 2:24 a.m. and resulted in a blood alcohol content reading of 0.188 percent. The second test was conducted at 2:59 a.m. and measured a blood alcohol content reading of 0.144 percent.

Thereafter, the state charged the defendant with illegal operation of a motor vehicle while under the influence of intoxicating liquor, failure to drive in the proper lane and failure to carry an operator's license. A part B

[2] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

information charged the defendant with being a second offender under § 14-227a (g) (2). The state then filed a two count substitute information charging the defendant with violations of § 14-227a (a) (1) and (2), known, respectively, as the behavioral offense and the per se offense. On June 5, 2009, the jury returned a verdict of guilty with respect to both counts. The defendant then entered a plea of nolo contendere to the subsequent offender charge. The court merged the conviction on the two counts in the first part of the substitute information, and, on August 28, 2009, sentenced the defendant to two years incarceration, execution suspended after seven months, of which 120 days was mandatory. The defendant also received three years probation and was required to pay a $1000 fine. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that he was prejudiced by the court's failure to sever the behavioral and per se offenses. His claim is not properly preserved. "[It is a] fundamental principle that, if the defendant deems an action of the trial court necessary to the fairness of his trial, he has a responsibility to present such a claim clearly to the trial court so that the trial court may consider it and, if it is meritorious, take appropriate action. That is the basis for the requirement that ordinarily a defendant must raise in the trial court the issues that he intends to raise on appeal." (Internal quotation marks omitted.) *State* v. *Berube*, 256 Conn. 742, 747, 775 A.2d 966 (2001). Here, the defendant did not seek severance and accordingly has not preserved his ability to raise this claim before this court.[3]

---

[3] The defendant also claims that the court committed plain error. "As we often have stated, [p]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks

## II

The defendant also claims that he was prejudiced by expert testimony that was presented at trial. Specifically, he argues that the cumulative effect of the expert testimony that was admitted regarding the amount of alcohol in his blood was prejudicial. He relies on § 14-227a (c), which requires that in prosecutions under (a) (1), the behavioral violation, "evidence respecting the amount of alcohol in the defendant's blood or urine at the time of the alleged offense . . . shall be admissible only at the request of the defendant." General Statutes § 14-227a (c). We decline to review the defendant's claim.

The following additional facts and procedural history are relevant. On January 24, 2009, the defendant filed a motion in limine seeking to preclude any testimony of Robert Powers, a toxicologist who testified for the state, about the number of alcoholic drinks that the defendant would have needed to consume to reach the blood alcohol readings on the Intoxilyzer 5000 and the observable signs of intoxication that one with the registered blood alcohol levels would exhibit, including the effects of those levels of blood alcohol on the ability to operate a motor vehicle. The defendant claimed that admitting this evidence would violate § 14-227a (c).[4] On June 1, 2009, the court denied the motion with respect to testimony about the number of drinks and observable signs of intoxication. It granted the defendant's motion in that the court indicated that it would give the jury

omitted.) *Abdullah* v. *Commissioner of Correction*, 123 Conn. App. 197, 210, 1 A.3d 1102, cert. denied, 298 Conn. 930, 5 A.3d 488 (2010). This claim does not present the " 'truly extraordinary [situation]' " that will result in a " 'manifest injustice' " such that public confidence in the justice system will be diminished, particularly when a motion for severance was never raised before the court. Id.

[4] The motion erroneously refers to § 14-227a (d), but the quoted language makes clear that the defendant relied on § 14-227a (c).

a limiting instruction restricting the admissibility of the Intoxilyzer results to only the charge under § 14-227a (a) (2) and not (a) (1). The court noted on the record that the defendant had said[5] that what "he really wanted [was] a limiting instruction to the jury, should, that— the test results come in, that they only come in for purposes of their determination as to count two . . . ." At trial, the court issued a limiting instruction to this effect three times: prior to Powers' testimony regarding the Intoxilyzer results, prior to cross-examination of Powers and in its final charge to the jury.

The defendant concedes that each subject of Powers' testimony was individually admissible, but he claims that the cumulative prejudicial effect requires reversal. We first consider whether, as the state claims, the defendant did not properly preserve this claim. The defendant argues that his claim is preserved by his motion in limine, or, alternatively, that reversal is required by the plain error doctrine.[6] The motion in limine did not preserve this claim. The defendant told the court that he was seeking a limiting instruction with respect to the Intoxilyzer results, and the court granted this request. During trial, the defendant did not object to questioning regarding any of the issues he raised in his motion in limine.

Further, the defendant has waived his claim objecting to the limiting instruction as being insufficiently detailed.[7] Waiver is the "intentional relinquishment or

[5] Apparently, the issue had been discussed in chambers.

[6] The defendant mentions our supervisory powers in his brief in the title of one of the sections on this claim but does not further invoke this claim. Therefore, we do not address it because it is inadequately briefed.

[7] There are essentially three ways in which Powers' testimony could be challenged by the defendant. He could claim that the evidence was inadmissible, but here, he failed to object at trial. Second, the defendant could, and does, challenge the sufficiency of the limiting instruction. This fails for the reasons discussed. Finally, the defendant could, and does, argue that the counts should have been severed. As discussed previously; see part I of this opinion; the defendant never moved to sever. Thus, this claim is not preserved.

abandonment of a known right . . . ." (Internal quota-
tion marks omitted.) *State* v. *Kitchens*, 299 Conn. 447,
474, 10 A.3d 942 (2011). Our Supreme Court has held:
"[W]hen the trial court provides counsel with a copy
of the proposed jury instructions, allows a meaningful
opportunity for their review, solicits comments from
counsel regarding changes or modifications and coun-
sel affirmatively accepts the instructions proposed or
given, the defendant may be deemed to have knowledge
of any potential flaws therein and to have waived implic-
itly the constitutional right to challenge the instructions
on direct appeal." Id., 482–83.

Here, the defendant reportedly[8] submitted proposed
jury instructions. The court provided counsel with cop-
ies of its proposed instructions to the jury and con-
ducted a page-by-page inquiry regarding any objections
to the instructions. The court explicitly stated during
this review: "[B]e mindful that the new page twenty-
eight has the—with regard to this count, you may not
consider any testimony or evidence relating to Intoxi-
lyzer results." The defendant did not object, and the
court gave this instruction verbatim to the jury. Accord-
ingly, the defendant has waived this claim.[9] See *State*
v. *Kitchens*, supra, 299 Conn. 474.

## III

The defendant also claims that the court erred in
excluding testimony from his wife, Carol Brown, regard-
ing whether he was under the influence when she met

[8] The defendant's request to charge cannot presently be found in the court
file, but reference to the request appears in the record.

[9] The defendant also claims that the court committed plain error. Plain
error review is inappropriate in the circumstances of this case. See *Abdullah*
v. *Commissioner of Correction*, 123 Conn. App. 197, 210, 1 A.3d 1102, cert.
denied, 298 Conn. 930, 5 A.3d 488 (2010). "[I]n the absence of an indication
to the contrary, the jury is presumed to have followed [the trial court's]
curative instructions." (Internal quotation marks omitted.) *State* v. *Longo*,
106 Conn. App. 701, 710, 943 A.2d 488 (2008). We previously have upheld
jury instructions concerning the inadmissibility of chemical evidence with
regard to § 14-227a (a) (1) in a trial involving both subdivisions of § 14-227a

him at the police barracks in order to drive him home. We disagree.

The following additional facts are relevant. At trial, defense witness Carol Brown testified on direct examination that the defendant sometimes did not stay in his lane while driving and that he had a tendency to listen to the radio. During cross-examination, the state elicited testimony that Carol Brown was asleep during the night of April 9, 2008, at the time the defendant was stopped by the police. On redirect examination, she testified that while she was asleep in her bed, she was awakened by a telephone call from the defendant asking her to pick him up at the barracks. Defense counsel then asked Brown on redirect examination: "When you picked him up, was he under the influence?" The state objected, and defense counsel replied: "Lay opinion, Your Honor." The court sustained the objection without explanation. The defendant did not rephrase the question or make an offer of proof.

"The appropriate standard of review in cases concerning the admissibility of evidence is limited to whether the trial court abused its discretion. . . . It is generally accepted that a trial court has broad discretion in ruling on the admissibility of evidence and appellate courts will ordinarily not disturb a trial court's ruling on admissibility of evidence unless a clear abuse of discretion is shown. . . . Every reasonable presumption should be given in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. Reversal is required only when an injustice appears to have occurred." (Internal quotation marks omitted.) *State* v. *Wright*, 58 Conn. App. 136, 148, 752 A.2d 1147, cert. denied, 254 Conn. 907, 755 A.2d 884 (2000).

(a). See *State* v. *Gracia*, 51 Conn. App. 4, 14–15, 719 A.2d 1196 (1998). Accordingly, the defendant's argument lacks merit.

The defendant argues that Carol Brown's testimony should have been admitted as lay opinion. In order for testimony to be admissible, it must be relevant. Relevant evidence is "evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. Here, the court reasonably could have concluded that the testimony of the defendant's wife was irrelevant. The defendant was arrested by Morgan at 1:22 a.m. The witness testified that she picked up the defendant "between two and three, I guess." The second Intoxilyzer test, however, was reportedly administered at 2:59 a.m., and police provided the defendant with a copy of the results at 3:05 a.m. Therefore, it was reasonable for the court to deduce that the witness did not pick up the defendant until some time after 3 a.m.—approximately two hours after the defendant was arrested for operating a motor vehicle under the influence. The court reasonably could have concluded, on the minimal record presented, that an opinion about whether the defendant was "under the influence"[10] at this time was not relevant to whether he was "under the influence" at the time of his arrest.[11] Accordingly, we conclude that the court did not abuse its discretion by excluding

[10] Though a lay witness may, as a general proposition, testify as to whether someone appeared inebriated; see State v. DiLoreto, 88 Conn. App. 393, 397, 870 A.2d 1095 (2005); the more technical issue of whether a person is "under the influence" may present a more problematic issue, which we need not resolve here.

[11] The defendant's argument assumes that Carol Brown's answer would have been negative. A positive answer presumably would have been relevant. But because the defendant did not make an offer of proof, there is no indication as to what the witness' answer would have been to the question: "When you picked him up, was he under the influence?" Also, the defendant claims that his sixth amendment right to present a defense was violated by the exclusion of the witness' testimony. Evidence introduced at trial, however, must still conform to the rules of evidence in order to be admissible, and the defendant's evidence here failed to do so. Therefore, his constitutional claim lacks merit.

Carol Brown's testimony regarding whether the defendant appeared to be under the influence.

## IV

The defendant next claims that his due process rights were violated by the admission into evidence of his refusal to answer certain questions by Morgan after his *Miranda* rights were given. We disagree.

The following additional facts and procedural history are relevant. On January 26, 2009, the defendant filed a motion in limine to prohibit the admission of a motor vehicle supplemental report, known as the A44, into evidence. He alleged that the introduction of the report would violate his constitutional right against self-incrimination pursuant to *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), because it reflected that the defendant refused to answer certain questions after having been informed of his *Miranda* rights. The form specified that the defendant declined to answer how much he had drunk, where he had drunk, and when he last had eaten and what he had eaten. The court denied the motion on June 1, 2009, and the issue was reserved for resolution at trial.

At trial, outside the presence of the jury, the state conducted an offer of proof through Morgan regarding the A44 form. The defendant objected to its admission on the grounds of lack of foundation, that it violated his right to confrontation under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), and that it constituted hearsay. The court admitted the record, and the defendant has not claimed on appeal that this ruling was erroneous.

During cross-examination of Morgan by the defendant, after the A44 form was in evidence, the following exchange occurred:

"Q. Would you characterize [the defendant] that evening as being cooperative with you?

"A. Yes, he was—

"Q. Okay.

"A. —cooperative.

"Q. Did he obey your instructions?

"A. Yes, he did.

"Q. He wasn't combative with you, was he?

"A. No, sir.

"Q. He did what he was told?

"A. Yes, sir."

The defendant also asked Morgan whether he "asked [the defendant] a whole bunch of questions" and proceeded to list several of the questions on the A44 form. On redirect examination, the state asked: "Now, on April 9, 2008—if I may have a moment, did you ask the defendant with regards to this form how much he had to drink?" After responding that he did and being asked what the defendant's reply was, Morgan testified that the defendant refused to answer. The defendant objected on the ground of *Doyle* v. *Ohio*, supra, 426 U.S. 610,[12] and the state responded that the line of questioning had been opened by the defendant. The court agreed and overruled the objection.

"Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal

---

[12] *Doyle* v. *Ohio*, supra, 426 U.S. 610, provides that no unfavorable inference may constitutionally be drawn from the silence of an accused after he has been advised of his right to remain silent.

by the opposing party. Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it where the party initiating inquiry has made unfair use of the evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Raynor*, 84 Conn. App. 749, 766, 854 A.2d 1133, cert. denied, 271 Conn. 935, 861 A.2d 511 (2004). In the *Doyle* context, a defendant does not have the right to be " 'selectively silent' " after he receives *Miranda* warnings. *State* v. *Talton*, 197 Conn. 280, 295, 497 A.2d 35 (1985).[13]

"The basic purpose of redirect examination is to enable a witness to explain and clarify relevant matters in his testimony which have been weakened or obscured by his cross-examination. . . . The scope of redirect examination, however, is limited by the subject matter of cross-examination. . . . Furthermore, [t]he extent and scope of redirect examination . . . may be limited within the discretion of the trial judge." (Internal quotation marks omitted.) *Corriveau* v. *Corriveau*, 126 Conn. App. 231, 237, 11 A.3d 176, cert. denied, 300 Conn. 940, 17 A.3d 476 (2011).

In the present case, by asking on cross-examination whether the defendant was cooperative with Morgan, the defendant opened the door to the state's follow-up question on redirect. Therefore, the defendant, attempting to show that he had been cooperative and obedient, allowed the state to introduce evidence of his unresponsive answers on the A44 form. The defendant

---

[13] Although the defendant has cast his argument in terms of *Doyle* v. *Ohio*, supra, 426 U.S. 610, *Doyle* is not directly applicable. This case is governed by *State* v. *Talton*, supra, 197 Conn. 292–96, in which our Supreme Court held that *Doyle* is not implicated when an accused, having been advised of his right to remain silent, nevertheless answers a number of questions but selectively declines to answer several others, especially where the declination does not invoke a right to remain silent. As in *Talton*, we need not "decide the boundaries of intermittent assertion of the right to remain silent . . . ." Id., 295.

cannot reap the benefits of inquiry into one subject and expect the state's questioning within the same scope to be held impermissible. Accordingly, we find no abuse of discretion in the court's ruling that the state's inquiry into the defendant's refusal to answer certain questions on the A44 form was proper.

V

The defendant finally claims that the evidence adduced at trial was insufficient to prove that he was guilty of operating a motor vehicle with an elevated blood alcohol content under § 14-227a (a) (2). In view of the foregoing analysis, we do not reach the merits of this claim. A finding of guilt under either § 14-227a (a) (1) or (2) is sufficient to sustain the conviction, and here, the jury returned a guilty verdict on both counts. Because we have concluded that the court did not err in its rulings that the defendant challenged, we do not address his insufficiency claim.[14] This court reached a procedurally similar conclusion in *State* v. *Hood,* 106 Conn. App. 189, 198–99, 941 A.2d 955 (refusing to reach defendant's challenge to denial of his motion for judgment of acquittal of having violated § 14-227a [a] [1] after upholding evidentiary rulings regarding conviction under § 14-227a [a] [2]), cert. denied, 286 Conn. 921, 949 A.2d 481 (2008).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[14] The defendant claims that in light of both experts' testimony at trial, the Intoxilyzer results are unreliable. We do not address this assertion because we do not reach his insufficiency claim. Further, the limiting instruction given by the court restricted the consideration of the Intoxilyzer results to § 14-227a (a) (2) only, and, accordingly, any alleged unreliability would not have affected the conviction under § 14-227a (a) (1).